**Alberto USPANGO, Maria Leal and Edgar A. Uspango, Petitioners,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 01–2911.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a): March 5, 2002.

Filed: May 1, 2002.

Frederick A. Organ, Law Office of Frederick A. Organ, River Vale, New Jersey, for petitioners.

Robert D. McCallum, Jr., John J. Andre, Edward C. Durant, David M. McConnell, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., Christopher C. Fuller, John D. Williams, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for respondent.

BEFORE: SLOVITER, AMBRO, Circuit Judges, and SHADUR, District Judge [*]

## OPINION OF THE COURT

SHADUR, Judge.

Alberto Uspango ("Uspango") petitions for review of the final decision of the Board of Immigration Appeals ("Board") affirming an Immigration Judge's denial of the application for cancellation of removal that Uspango filed for himself, his wife Maria Leal ("Leal") and their son Edgar. Uspango argues that the Board abused its discretion when it determined that he was subject to the changes imposed by the Illegal Immigration Reform and Immigrant Responsibility Act ("Act"), which now requires ten years' continuous physical presence in the United States for an alien to become eligible for cancellation of removal, a provision that is coupled with a statutory "stop-time" rule that enters into the calculation of that length of time. We have jurisdiction under 8 U.S.C. § 1252(a)(1).[1] For the reasons stated in

---

[*] Hon. Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

1. All further citations to Title 8 provisions will take the form "Section—," omitting the prefatory "8 U.S.C."

this opinion, we deny Uspango's petition for review.

## Facts

Uspango, a native and citizen of Mexico, arrived in the United States in about March 1988[2] without being admitted or paroled. Uspango and Leal have three children, two of whom were born in the United States (and are thus United States citizens) and one, Edgar, who was born in Mexico. In July 1996 Uspango filed a Request for Asylum in the United States on behalf of himself, Leal and Edgar.

On April 1, 1997 the Act became effective, implementing several changes in immigration law. Two are of particular import to this case. First of those is a revision of the earlier provisions that had made relief in the form of "suspension of deportation" available to non-permanent resident aliens who satisfied a number of criteria, including seven years of continuous physical presence in the United States. That was replaced in the Act by "cancellation of removal," which instead requires ten years of continuous physical presence in the United States (Section 1229b(b)(1)(A)). Second, the Act imposed a "stop-time" rule that deems the period of continuous physical presence in the United States to end when an alien "is served a notice to appear under section 1229(a)"[3] (Section 1229b(d)(1)).

All of the Act's provisions apply to aliens whose administrative proceedings were commenced on or after its April 1, 1997 effective date (see *Xu Cheng Liang v. INS*, 206 F.3d 308, 310 (3d Cir.2000)). All aliens whose proceedings commenced before that date remain subject to the pre-Act provisions.

On December 30, 1997 the Immigration and Naturalization Service ("INS") issued Notices to Appear ("Notices") for Uspango and his family, asserting that Uspango was removable from the United States as an alien present without having been admitted or paroled. Those notices were sent to Uspango via regular mail on January 12, 1998 and were filed with the Immigration Court in Newark, New Jersey on January 16, 1998.

On March 17, 1998 the Immigration Judge began Uspango's removal hearing and scheduled a master hearing for May 12, 1998. On both dates Uspango conceded service of the Notice and admitted that he was a citizen and native of Mexico. In addition he admitted that he had entered the United States without inspection on or about March 1988, but he requested relief in the form of cancellation of removal.

That request was denied by the Immigration Judge on the grounds that Uspango was subject to the Act and that he had not met the requirement of ten years' continuous physical presence in the United

---

**2.** Uspango's asylum application read differently: It listed his own date of last arrival into the United States as August 4, 1990, and it specified arrival dates of November 3, 1990 for Leal and March 4, 1994 for Edgar. Those last two dates are difficult to reconcile, for it would surely seem that Leal's last date of entry must have been later than the time of Edgar's October 26, 1993 birth in Mexico. As for Uspango's now-claimed 1988 date of last arrival, however, no quarrel is voiced in the government's brief. *More significantly*, because the question whether Uspango last ar-

rived in 1988 or 1990 has no effect on our disposition of this petition, this opinion will employ the 1988 date.

**3.** That section authorizes the Attorney General to cancel removal in the case of inadmissible or deportable aliens. For convenience we (like the parties, and in accordance with existing caselaw) will employ the usage "commencement of administrative proceedings" to denote the critical date.

States when the INS commenced the proceeding in January 1998. Uspango then requested, and was granted, relief in the form of voluntary departure. At the same time he also withdrew his request for political asylum.

Uspango appealed the Immigration Judge's decision to the Board, arguing (1) that his being subjected to the Act's ten year physical presence requirement instead of the pre-Act seven year requirement violated his due process rights and alternatively (2) that he should be deemed to have met the Act's ten year requirement substantially (in January 1998, when the Notices were issued and filed, he was only about two months short of the ten year period). · That appeal was denied on June 20, 2001 by the Board, which concluded that Uspango was statutorily ineligible for cancellation of removal and suspension of deportation. Uspango then filed this petition for review.

### Standard of Review

■ Our scope of review is narrow. Under Section 1103(a)(1) the Attorney General has been "charged with the administration and enforcement of this chapter," and Congress has provided there that his "determination [s] and ruling[s] ... with respect to all questions of law shall be controlling." *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) teaches that "principles of *Chevron* deference are applicable" in the immigration context (see *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). And because the Board has been vested with the power to "exercise [the] discretion and authority conferred upon the Attorney General by law" (8 C.F.R. § 3.1(d)(1)),[4] those principles of deference also apply to decisions of

the Board (*Aguirre–Aguirre*, 526 U.S. at 425, 119 S.Ct. 1439). Our inquiry is thus limited to determining whether the Act is either silent or ambiguous as to the application of the revised ten year physical presence standard to individuals in Uspango's situation and, if so, whether the Board's interpretation is based on a permissible statutory construction (*Abdulai v. Ashcroft*, 239 F.3d 542, 551–52 (3d Cir. 2001)).

### Application of the Act

■ Uspango argues that he is subject to the pre-Act seven year physical presence requirement because his proceeding was assertedly commenced before the Act's effective date of April 1, 1997. That argument fails.

INS regulations provide that removal proceedings commence with the filing of a notice to appear with the Immigration Court (Reg. §§ 3.14 and 239.1). That concept has been endorsed by several other Courts of Appeals (see, e.g., *DeLeon–Holguin v. Ashcroft*, 253 F.3d 811, 814 (5th Cir.2001); *Cortez–Felipe v. INS*, 245 F.3d 1054, 1057 (9th Cir.2001); *Costa v. INS*, 233 F.3d 31, 37 (1st Cir.2000); *Morales–Ramirez v. Reno*, 209 F.3d 977, 983 (7th Cir.2000)).

Although we have not had occasion to deal with that issue in any detail, we have previously suggested (unlike those other courts) that removal proceedings might instead be viewed as commencing when the alien is served with, rather than upon the court filing of, the notice to appear (*Pinho v. INS*, 249 F.3d 183, 185 (3d Cir.2001)). But we need not now choose between those alternatives, for Uspango loses either way. Both the filing of the Notice with the Immigration Court and the service of the Notice upon Uspango occurred

---

4. All further citations to the provisions of 8 C.F.R. will take the form "Reg. § —."

in January 1998[5]—well after the Act's April 1, 1997 effective date.

Uspango contends that his proceeding commenced before the filing and service of the Notice, arguing that he began the proceeding by filing his asylum petition in 1996. If that were the case, then Uspango would be subject to the pre-Act requirement of seven years' physical presence. Uspango points to the recent Supreme Court decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) in an effort to support his contention.

*St. Cyr*, 533 U.S. at 325, 121 S.Ct. 2271 teaches that the Act's repeal of Section 212(c), a statutory provision that had permitted waiver of deportation for persons convicted of certain crimes, could not be applied retroactively to defendants who pleaded guilty before the Act's enactment but whose removal proceedings were initiated after the Act's effective date. Thus *St. Cyr* addressed the rights of non-permanent resident aliens who fall into one particular category: individuals who, as defendants in criminal cases, entered into quid pro quo agreements with the government in which they waived certain constitutional rights and conferred specified benefits upon the government in exchange for receiving certain benefits, including the possibility of a waiver of deportation (*id.* at 321–22, 121 S.Ct. 2271).

Reiterating the presumption against retroactive legislation articulated in *Landgraf v. USI Film Products*, 511 U.S. 244, 265–66, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), *St. Cyr*, 533 U.S. at 316, 121 S.Ct. 2271 held that "[a] statute may not be applied retroactively ... absent a clear indication from Congress that it intended such a result." Because there was no such indication in the Act of a congressionally intended retroactive application to defendants who had relied on the pre-Act provisions in agreeing to plea bargains, *St. Cyr*, *id.* at 325, 121 S.Ct. 2271 ruled that the repeal of Section 212(c) may not be applied retroactively to those individuals.

That holding does not support Uspango's argument that his proceeding commenced when he filed his asylum petition. Unlike the situation in *St. Cyr*, Uspango can demonstrate no detrimental reliance on pre-Act law. His act of filing an asylum petition did not implicate any quid pro quo arrangement with the government— Uspango gave up no rights by filing the petition, and the government did nothing to induce him to file, nor did it receive any benefits from his having done so. Quite simply, none of the concerns addressed by *St. Cyr* as bearing on retroactive application of the Act are present in this case.

We therefore hold that the removal proceeding against Uspango did not commence when he filed his asylum petition. Instead that proceeding commenced in January 1998, well after the effective date of the Act. Hence Uspango is subject to all of the Act's provisions, including its ten year physical presence requirement.

### Stop–Time Provision

That determination also quickly disposes of Uspango's argument that he is not subject to the Act's stop-time provision. Although he correctly points out that the stop-time provision may not be applied retroactively to proceedings initiated before the Act's effective date, that argument is of no consequence once it is recognized that Uspango's proceedings began after

---

**5.** Uspango has not provided a specific date when he received the Notice via mail delivery, but during the March 17, 1998 removal hearing he conceded prior service of the Notice— and nothing in the record suggests that such service had not been completed within a reasonable time after the January 12, 1998 mailing of the Notice.

that date. By applying the stop-time provision, the Board properly determined that Uspango's physical presence in the United States ended in January 1998. And because the earliest time at which Uspango might have met the ten-year physical presence requirement was in March 1998, he cannot meet that criterion. In sum, Uspango is not eligible for cancellation of removal under the Act.

## Uspango's Other Arguments

In a final footnote Uspango advances three additional arguments: (1) that the stop-time rule violates equal protection, (2) that ineffective assistance of counsel prevented him from filing his asylum claim early enough to qualify for consideration under pre-Act law and (3) that the INS abused its discretion by serving the Notice two months before he would have satisfied the ten year physical presence requirement under the Act. None of those arguments has merit.

█ First, we have already held that the stop-time provision is constitutional (*Pinho*, 249 F.3d at 189–90).[6] Second, there is no Sixth Amendment right to counsel in deportation hearings, so any claim of ineffective assistance of counsel advanced by Uspango must be based on the Fifth Amendment's due process guaranty (*Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 131 (3d Cir.2001)). But to meet the standard for a due process violation, Uspango must show that he was "prevented from reasonably presenting his case" (*id.*, citing *Lozada v. INS*, 857 F.2d 10, 13–14 (1st Cir.1988)). He has made no effort to do so here.

---

6. That holding coincides with the decisions of every other Court of Appeals that has considered the constitutionality of the stop-time provision (see *Ram v. INS*, 243 F.3d 510, 517

█ Finally, there is no support for Uspango's claim that the INS abused its discretion by issuing the Notice when it did. Authority to determine whether and when to initiate removal proceedings rests solely with the INS (*Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999); *Xu Cheng Liang*, 206 F.3d at 315). INS' initiation of proceedings against Uspango in January 1998 was well within that authority.

## Conclusion

Because Uspango's removal proceedings commenced after the April 1, 1997 effective date of the Act, he is subject to the ten year physical presence requirement and to the stop-time provision introduced by the Act. And because Uspango had concededly not been physically present in the United States for ten years when his proceeding commenced in January 1998, he does not meet the requirements under the Act for cancellation of removal. Uspango's petition for review is therefore DENIED.

---

(9th Cir.2001); *Afolayan v. INS*, 219 F.3d 784, 789 (8th Cir.2000); *Angel–Ramos v. Reno*, 227 F.3d 942, 948–49 (7th Cir.2000)).