**Francisco VASQUEZ–ZAVALA; Cristina Vasquez–Patino, Petitioners,**

v.

**John D. ASHCROFT, U.S. Attorney General, Respondent.**

No. 01–70973.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 17, 2003.*

Filed April 7, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

Walter Rafael Pineda, Redwood City, CA, for the petitioners.

Anthony P. Nicastro, U.S. Department of Justice, Washington, DC, for the respondent.

Before: SCHROEDER, Chief Judge, NOONAN and CLIFTON, Circuit Judges.

CLIFTON, Circuit Judge.

Francisco Vasquez–Zavala and Cristina Vasquez–Patino petition for review of a final order of removal from the Board of Immigration Appeals ("BIA"). The BIA held that because the Immigration and Naturalization Service's charging document was not filed until after April 1, 1997—the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), PL 104–208 Div. C, 110 Stat. 3009 (1996)—petitioners were no longer statutorily eligible for the pre-IIRIRA remedy of suspension of deportation but instead could only seek cancellation of removal under IIRIRA. Petitioners seek to distinguish their situation from the one presented to us in *Jimenez–Angeles v. Ashcroft*, 291 F.3d 594 (9th Cir.2002), where we held that an alien who presented herself to the INS before April 1, 1997 did not have "settled expectations" of being placed in deportation proceedings and was therefore properly in removal proceedings because the INS did not file the charging document until after April 1, 1997. Petitioners argue that because of the way they presented themselves to the INS-by filing an application for asylum before April 1, 1997—they had "settled expectations" of being placed in deportation proceedings rather than removal proceedings, or, alternatively, that they had due process rights to the same. We disagree and deny the petition.

## I. Background

Petitioners are natives and citizens of Mexico. Mr. Vasquez–Zavala entered the United States without inspection in January 1986 near San Ysidro, California, while his wife and co-petitioner, Ms. Vasquez Patino, entered in the same vicinity, also without inspection, in March 1980.[1]

On March 10, 1997, Petitioners filed an application for asylum with the INS.[2] On July 8, 1997 the INS denied the asylum application and filed a Notice to Appear ("NTA"), charging Petitioners as being removable as "alien[s] present in the United States without having been admitted or paroled" under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i).

On June 1, 1998, Petitioners, represented by counsel, appeared before an immigration judge ("IJ") and conceded the allegations of fact in the NTA. Petitioners argued that they should be in deportation proceedings rather than removal because they had filed their asylum application prior to the effective date of IIRIRA. The IJ found Petitioners removable as charged because they lacked a qualifying relative

---

**1.** Ms. Vasquez–Patino's date of entry is disputed as either March 1980 or March 1994, but the date dispute is immaterial since even assuming her proffered entry date, March 1980, the outcome under IIRIRA is unchanged.

**2.** Ms. Vasquez–Patino is a derivative beneficiary on her husband's application.

who would be burdened if they were removed, which is a requirement for cancellation of removal.

On May 18, 2001, the BIA, in a de novo review, affirmed the IJ's order, rejecting Petitioners' argument that the action commenced when they filed their asylum application with the INS. The BIA noted that an INS action does not commence until the Service files a charging document with the Immigration Court. Given that the INS did not file the NTA until July 8, 1997, the BIA found that Petitioners could not apply for suspension of deportation since, after April 1, 1997, that relief was no longer available.

Petitioners do not seek review of the merits of their asylum application, but rather argue that pre-IIRIRA law applies by virtue of filing for asylum before IIRIRA took effect.

## II. Standard of Review

We review de novo the BIA's determination of purely legal questions. *Molina–Estrada v. INS,* 293 F.3d 1089, 1093 (9th Cir.2002). Claims of due process violations in INS proceedings are also reviewed de novo. *Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1222 (9th Cir.2002). When the BIA reviews the IJ's order de novo, as it did here, we limit our review to the BIA's decision. *Varela v. INS,* 204 F.3d 1237, 1239 (9th Cir.2000).

## III. Discussion

Prior to IIRIRA, immigration law provided for two types of removal proceedings: deportation (for aliens within the United States) and exclusion (for aliens outside the United States). *See Hose v. INS,* 180 F.3d 992, 994 (9th Cir.1999) (en banc).

Before IIRIRA took effect on April 1, 1997, an alien against whom deportation proceedings had been commenced could apply for suspension of deportation, pro-

vided she (a) had been continuously physically present in the United States for seven years, (b) had good moral character, and (c) could show that deportation would work a severe hardship upon herself or upon certain United States citizen relatives. *See Jimenez–Angeles,* 291 F.3d at 597 (citing 8 U.S.C. § 1254 (repealed 1997)). When IIRIRA took effect, "deportation" was replaced by "removal," and "suspension of deportation" was replaced by "cancellation of removal." *Id.* (citing 8 U.S.C. § 1229b(b)); *see also Hose,* 180 F.3d at 994 n. 1 (IIRIRA "merge[d] deportation and exclusion proceedings into a broader category entitled 'removal proceedings.'") (quoting IIRIRA § 304). Cancellation of removal now requires (a) ten years of continuous presence (formerly seven), (b) good moral character, and (c) a finding that removal of the alien would work a hardship upon a qualifying United States citizen or legal permanent resident spouse, child, or parent (as opposed to the alien herself). *See* 8 U.S.C. § 1229b(b).

For cases where deportation proceedings commenced prior to April 1, 1997 but remained ongoing on April 1, 1997, IIRIRA includes transitional rules providing that, for the most part, the new provisions of IIRIRA do not apply. *Jimenez–Angeles,* 291 F.3d at 597. For actions initiated by the INS on or after April 1, 1997, IIRIRA's permanent rules apply. *Id.* The difference is important to these Petitioners. They are not able to identify a qualifying United States citizen or legal permanent resident spouse, child, or parent upon whom their removal would work a hardship, so they do not qualify for "cancellation of removal" under IIRIRA. Under previous law, the hardship to themselves might have permitted them to qualify for "suspension of deportation."

Although the application for asylum presents a new twist, this case is not sub-

stantively distinguishable from *Jimenez–Angeles,* which dealt with the question of whether pre-IIRIRA or IIRIRA rules applied to an alien who presented herself to the INS before April 1, 1997 in the hope of invoking pre-IIRIRA law. There, we held that IIRIRA applied because the INS did not file the charging document until after April 1, 1997. *Jimenez–Angeles,* 291 F.3d at 600. We rejected petitioner's analogy to *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), where the Supreme Court held that, despite the charging document being filed after April 1, 1997, application of IIRIRA was impermissibly retroactive due to a unique situation of a plea bargain entered into before that date, which gave rise to "settled expectations" of deportation proceedings. *Jimenez–Angeles,* 291 F.3d at 602.

Here, Petitioners observe that asylum is the only alien application that *necessarily* results in an INS action in the event it is denied. Unlike other alien applications, where, upon denial, the INS retains discretion to formally charge the alien, in asylum cases, the INS *must* refer the alien to deportation (pre-IIRIRA) or removal proceedings (IIRIRA) once the application is denied. *See* 8 C.F.R. § 208.14(b)(2) (1995); 8 C.F.R. § 208.14(c)(1) (2003). Petitioners argue that the absence of discretion in this case created "settled expectations" that Petitioners would be put in deportation rather than removal proceedings. Under this logic, Petitioners insist that the INS action should be construed to have commenced on March 10, 1997, when they filed their asylum application. This argument is unpersuasive.

Assuming they filed the application for asylum in good faith, Petitioners could not properly have presumed it would be denied and that the INS would commence deportation or removal proceedings at all. Even if they assumed that the application would be denied, any expectation that an INS action would thereafter commence could not support a sufficient expectation as to *when* it would commence. Accordingly, given that the INS did not file the NTA until July 8, 1997, Petitioners could not apply for suspension of deportation since, after April 1, 1997, that relief was no longer available.

The Third Circuit is the only other Court of Appeals to have specifically addressed the situation presented here. *See Uspango v. Ashcroft,* 289 F.3d 226 (3d Cir.2002). In *Uspango,* as in *Jimenez–Angeles,* the petitioner analogized to *St. Cyr* for the proposition that he had settled expectations of being placed in deportation rather than removal proceedings. The Third Circuit noted the uniqueness of *St. Cyr*'s plea bargain *quid pro quo* situation and rejected any similar expectations for an asylum applicant who simply filed his application before April 1, 1997. *Id.* at 230. Although the petitioner in *Uspango* did not focus on the lack of discretion in charging an alien upon denying his asylum application, we do not see any reason to distinguish the holding on that basis. Accordingly, we join the Third Circuit in rejecting any "settled expectations" argument where a petitioner merely filed for asylum prior to IIRIRA's effective date.

■ We also reject Petitioners' due process challenge to the application of IIRIRA. Petitioners do not contend that there were any procedural problems with their hearings or ability to present evidence, but rather argue that placing them in removal rather than deportation proceedings by itself amounts to a due process violation. Essentially, petitioners recast their settled expectations argument in due process jargon, *viz.,* that they had settled expectations of deportation and, by being placed in removal, those expectations were frustrated, thereby denying them due process. But since no expectations were frustrated,

as discussed above, there is no colorable due process claim. *See, e.g., Torres–Aguilar v. INS,* 246 F.3d 1267, 1271 (9th Cir. 2001) ("[P]etitioner must allege at least a colorable constitutional violation.... To be colorable ... the alleged violation need not be substantial, but the claim must have some possible validity.") (internal quotation marks and citation omitted).

The petition for review is DENIED.