**Ramon NOCHE; Consuelo Noche; Raymund Noche, Petitioners,**

v.

**John ASHCROFT, Attorney General of the United States.**

No. 02–3400.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 15, 2003.

Decided Aug. 6, 2003.

---

Before McKEE, BARRY, and ROSENN, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Petitioners Ramon Noche, his wife Consuelo Noche, and his son Raymund Noche are natives and citizens of the Philippines who entered the United States on May 8, 1989 on visitor visas which expired on January 31, 1990. On August 8, 1989, while in the United States, Consuelo Noche gave birth to her second son, Ryan Noche. The Noches subsequently overstayed their visitor's visas and, on March 20, 1993, Ramon Noche applied for political asylum on behalf of himself and his family. On November 13, 1997, the Immigration and Naturalization Service ("INS") issued Notices to Appear to the Noches charging them with removability under 8 U.S.C. § 1227(a)(1)(B) on the ground that they had overstayed their visas without INS authorization. On July 1, 1998, Noche submitted a second application for political asylum and withholding of removal, and, on April 1, 1999, separately applied for cancellation of removal.

On April 20, 1999, after an administrative hearing, an immigration judge ("IJ") found the Noches removable as charged and denied their applications for asylum, withholding of removal, and cancellation of removal. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision without opinion on April 9, 2002, and Noche filed a timely petition for review on May 9, 2002. We have jurisdiction over Noche's petition pursuant to 8 U.S.C. § 1252(a)(1), and will affirm.

## I.

The administrative record in this case consists primarily of Ramon Noche's testimony at the April 20, 1999 hearing concerning his alleged fear of persecution if he returned to the Philippines, a few affidavits from certain local government officials and police officers in the Philippines, and several United States Department of State reports and news articles concerning country conditions in the Philippines. Neither Consuelo nor Raymund Noche testified at the hearing.

At the April 20 hearing, Noche testified that if he was returned to the Philippines, he feared that he would be persecuted by the New People's Army ("NPA"), the military wing of the Communist Party of the Philippines. According to Noche, his fear of persecution is based on the NPA's attempts to extort financial contributions from him in 1987, before he left the Philippines in May 1989. Noche testified that from 1984 through 1989, he operated his own business, based in Manila with a branch office in his small hometown of Romblon, installing sound systems and disco lights for special events. According to Noche, every time he set up a sound system, he would make a speech criticizing the NPA because he considered the group an "anti-church, anti-democratic" terrorist organization. Noche did not specify how many speeches he gave, where he gave them, or who comprised his audience.

Noche testified that sometime in 1987, a representative of the NPA approached him in Romblon and warned him that he would be "fined" if he did not cease his "activities." Noche testified that he gave this individual some money so that the NPA would leave him alone. Despite his payment, Noche testified that a second unidentified individual approached him sometime later and informed him that his "fine" would be doubled, but walked away when

Noche refused to pay. Approximately one month later, according to Noche, he received an anonymous "black letter" stating that he would be killed if he did not pay. A few days after receiving the letter, Noche spoke to local law enforcement authorities, who advised him to leave Romblon and return to Manila. In support of this testimony, Noche submitted into evidence three very similar affidavits allegedly signed by Romblon officials suggesting that he leave the Philippines to escape the NPA.

According to Noche, he soon thereafter sold his business in Romblon, returned to Manila, and resided there with his mother-in-law until he brought his family to the United States on May 8, 1989. Noche testified that while he was in Manila, he received several telephone calls from the NPA, but did not give any specifics concerning the nature or substance of the calls. Noche testified that since he left the Philippines, he has kept in touch with his mother, who urged him to remain in the United States. He also testified that he believes he would be persecuted if he returned to the Philippines because he has read in Philippine newspapers and on the internet that the NPA is still active.

In his oral decision issued at the close of Noche's testimony, the IJ denied the Noches' applications for asylum, withholding of removal, and cancellation of removal. The IJ found that Ramon Noche's testimony was "less than detailed and specific," and noted that the affidavits from Romblon officials submitted by Noche were of limited reliability because they contained nearly identical statements and the affiants' suggestion that Noche should leave the Philippines to avoid the NPA was not supported by any objective record evidence. The IJ further found that there was no evidence that the NPA presented any credible threat to Noche outside of

Romblon. Accordingly, the IJ held that Noche had not met his burden of establishing eligibility for asylum or withholding of removal because he had not shown that he could not avoid persecution by relocating from Romblon to Manila or elsewhere in the Philippines. Finally, in a footnote, the IJ found that the Noches were ineligible for suspension of deportation because they had not been continuously present in the United States for ten years as required by 8 U.S.C. § 1229b(b)(1)(A).

## II.

The Noches raise four issues on appeal. First, they argue that the IJ's factual determination that Ramon Noche had not met his burden of establishing eligibility for asylum was not supported by substantial evidence. Second, they argue that the deportation of Ryan Noche's parents and older brother would violate his constitutional rights as an American citizen. Third, they argue that immigration officials are estopped from applying the ten-year continuous presence eligibility requirement for the discretionary relief of cancellation of removal in 8 U.S.C. § 1229b(b)(1)(A) because Noche filed his original asylum application in 1993, before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") changed the required continuous residence period from seven to ten years. *Compare* 8 U.S.C. § 1229b(b)(1)(A) *with* 8 U.S.C. § 1254(a)(2) (repealed 1996). Fourth, they argue that even if the government is not estopped from applying the ten-year residence requirement, the retrospective application of the requirement to their pre-amendment asylum application is unconstitutional. Because the BIA affirmed the IJ's decision and order without opinion, we review the IJ's decision to determine whether the BIA's final order of removal was appropriate. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n. 2 (3d Cir.2001).

■ As an initial matter, our precedent forecloses the Noches' constitutional and estoppel arguments. First, we have previously held that the deportation of the alien parents of a child born in the United States does not violate the constitutional right of that child, as a United States citizen, to choose his or her residence. *Acosta v. Gaffney*, 558 F.2d 1153, 1158 (3d Cir.1977). Just as the infant citizen in *Acosta*, Ryan Noche's return to the Philippines with his parents "will merely postpone, but not bar, [his] residence in the United States if [ ]he should ultimately choose to live here." *Id.* The Noche's arguments based on Ryan Noche's constitutional rights are, therefore, unpersuasive.

Second, we have also clearly held that IIRIRA's retrospective application of a ten-year continuous presence requirement to all aliens applying for the discretionary relief of cancellation of removal if their removal proceedings commenced after the effective date of IIRIRA is constitutional. *Uspango v. Ashcroft*, 289 F.3d 226, 229–230 (3d Cir.2002). The Noches' removal proceedings did not commence until after IIRIRA's effective date, even though Ramon Noche filed an application for asylum before IIRIRA's effective date. This factual scenario is indistinguishable from that in *Uspango*, where the petitioner had also filed an asylum application prior to IIRIRA's effective date, and where we expressly held that this did not change the fact that the petitioner's removal proceedings did not begin until after the statute's effective date. *Id.* at 230. Accordingly, pursuant to our clear holding in *Uspango*, the Noches are subject to the ten-year continuous presence eligibility requirement imposed by IIRIRA.

■ The Noches' argument that the government should be estopped from ap-

plying the ten-year continuous presence requirement because they applied for asylum in 1993, when only seven years of continuous presence were required, is likewise unavailing. In order to effectively argue estoppel against the government, the Noches must show some sort of affirmative misconduct by the INS in delaying their asylum application or not initiating their removal proceedings sooner. *See Yang v. INS,* 574 F.2d 171, 175 (3d Cir. 1978). Here, although the Noche's allege in their brief that the INS initiated a policy to "slow track" or "freeze" processing of asylum claims, the record contains no evidence that the INS intentionally delayed consideration of their asylum application in any way, let alone evidence of any affirmative misconduct. Moreover, it is well-established that the authority to determine whether and when to initiate removal proceedings rests exclusively with the INS. *Uspango,* 289 F.3d at 231. Since estoppel is, thus, inapplicable, the IJ was correct in concluding that the Noches were ineligible for the relief of cancellation of removal because they had not satisfied the ten-year continuous presence requirement.

Having disposed of the Noches' constitutional and estoppel arguments, we turn to their contention that the IJ's determination that Ramon Noche failed to meet his burden of establishing eligibility for asylum was not supported by substantial evidence in the administrative record. To establish eligibility for asylum, Noche must establish that he is "unable or unwilling" to return to the Philippines "because of persecution or a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Under the applicable substantial evidence standard of review, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the

contrary...." 8 U.S.C. § 1252(b)(4)(B); *see INS v. Elias–Zacarias,* 502 U.S. 478, 480, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

■ After thoroughly reviewing the administrative record in this case, we are convinced that the IJ's determination that Noche had not met his burden of establishing a well-founded fear of persecution is supported by substantial evidence. Under the applicable regulations, "[a]n [asylum] applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality ... and under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 208.13(b)(2)(C)(ii). Even assuming that Noche's terse and undetailed testimony that he was the victim of extortion by the NPA in Romblon in 1987 is true, the record is devoid of any evidence that he was ever subject to persecution by the NPA in Manila, or that the NPA would be inclined to persecute him if he now returned to Manila after being out of the Philippines for more than a decade.

Although Noche testified that he received calls from the NPA while he was living with his mother-in-law in Manila, he did not explain who was actually calling or what they said. Such testimony falls far short of evidence that Noche would be subject to persecution in Manila. Similarly, Noche proffered no evidence that he faces any current threat from the NPA. His testimony that his mother recently urged him to stay in the United States for unspecified reasons, absent any testimony or evidence that she or his family has been contacted by the NPA or that the NPA is still looking for Noche, does not support his contention that he reasonably fears persecution in Manila.

We hold that the IJ's factual finding that Noche had not established a well-founded fear of future persecution was supported by substantial evidence. Accordingly, we will deny the petition for review.