WOLLMAN, Circuit Judge,
dissenting.
The majority recognizes the validity of all aspects of Molina’s retroactivity claim, save one: whether application of IIRIRA would affect his substantive rights by retroactively eliminating his ability to argue for relief from removal. The majority concludes that it would not. Because I believe that such a holding is contrary to Eighth Circuit precedent, I respectfully dissent.
Molina applied for asylum in 1992. DHS did not finally adjudicate his application until 2005. During the thirteen years in which Molina’s application was pending, Congress enacted IIRIRA, which expanded the class of aliens subject to expedited removal via reinstatement of a prior removal order. IIRIRA enabled DHS to reinstate the removal order of an alien who had been previously removed and allowed administrative staff to determine when expedited removal applied. Immigration and Nationality Act § 241(a)(5), 8 U.S.C. § 1231(a)(5). Under the new law, “the alien is not eligible and may not apply for any relief’ from removal, meaning, for example, that the alien may not argue for suspension of deportation on the grounds of undue hardship. Id. Molina argues that, in light of his asylum application, DHS’s attempt to use expedited removal constitutes an impermissible retroactive application of IIRIRA.
As the majority notes, we have jurisdiction to consider a retroactivity claim in this context, because it presents a pure question of law. Lovan v. Holder, 574 F.3d 990, 994 (8th Cir.2009). Our consideration of this claim, as the majority states, is guided by Landgraf v. USI Film Prods., 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Because Congress did not explicitly prescribe the temporal reach of IIRIRA, we must determine whether application of IIRIRA to Molina would “impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.” 511 U.S. at 280, 114 S.Ct. 1483. If a statute merely changes “procedural rules” and *1074 does not affect “substantive rights, liabilities, or duties,” it will not have an impermissible retroactive effect. Id. at 275, 278, 114 S.Ct. 1483.
In Alvarez-Portillo v. Ashcroft, we concluded that IIRIRA had an impermissible retroactive effect on the petitioner because it denied him the ability to argue affirmative defenses to removal. 280 F.3d 858, 867 (8th Cir.2002), overruled on other grounds by Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). We found that this was a substantive rather than a merely procedural change. Id. We determined “that the elimination of a substantive defense, without more, attaches new legal consequences to events completed prior to enactment that would give rise to liability under the new statute.” Id. (internal punctuation omitted). Four other circuits have reached the same conclusion. Valdez-Sanchez v. Gonzales, 485 F.3d 1084, 1090-91 (10th Cir.2007) (“[W]hen application of IIRIRA § 241(a)(5) disturbs an alien’s substantive rights or expectations, such as the substantive relief available to the Petitioner in this case, DHS may not apply it retroactively.”); Faiz-Mohammad v. Ashcroft, 395 F.3d 799, 810 (7th Cir.2005) (holding IIRIRA’s preclusion of application for relief constitutes a new disability and is impermissibly retroactive); Cisneros v. U.S. Att’y Gen., 381 F.3d 1277, 1284 (11th Cir.2004) (holding IIRIRA’s denial of ability to apply for relief “created a new disability” and was impermissibly retroactive); Arevalo v. Ashcroft, 344 F.3d 1, 14 (1st Cir.2003) (“The availability of relief (or, at least, the opportunity to seek it) is properly classified as a substantive right.”). Applying Alvar ez-Portillo to Molina’s case, I conclude that retroactive deprivation of his ability to argue for relief from removal is impermissible.
The majority makes three arguments in reaching the opposite conclusion: (1) Molina’s claim is foreclosed by Femandez-Vargas, (2) IIRIRA did not affect the substance of Molina’s asylum application, and (3) Molina did not have a settled expectation in the ability to argue for relief from removal.
First, Femandez-Vargas does not foreclose relief for Molina. In FemandezVargas, the petitioner was subject to expedited removal based upon his continued illegal presence in the United States after IIRIRA’s enactment. 548 U.S. at 45-47, 126 S.Ct. 2422. Fernandez-Vargas failed to take affirmative steps to remedy his illegal presence until 2001, years after the new law took effect. Id. at 35, 126 S.Ct. 2422. Accordingly, the illegal act that subjected FernandezAVargas to expedited removal was his continued presence in the United States. Unlike Fernandez-Vargas, Molina took affirmative steps to legalize his presence. Molina applied for asylum well before IIRIRA took effect, and the agency did not consider his application until years after the passage of IIRIRA. Moreover, unlike Fernandez-Vargas, Molina was lawfully present and authorized to work in the United States pending the adjudication of his asylum application. Molina is not similarly situated to Fernandez-Vargas because he is being sanctioned for his re-entry and not for his continuing presence in the country.
The Court limited its holding in Femandez-Vargas to petitioners who, unlike Molina, failed to take steps to legalize their presence pre-IIRIRA. Id. at 46, 126 S.Ct. 2422. The Court expressed no opinion regarding the circumstances we confront here: a retroactivity claim brought by a petitioner who had sought to legalize his presence in the United States prior to the enactment of IIRIRA. Id. Thus, one questions the majority’s use of Fernandez-Vargas to satisfy the Landgraf analysis in light of the fact that Fernandez- *1075 Vargas did not resolve whether deprivation of the ability to argue for relief from removal affected substantive rights. Fernandez-Vargas, 548 U.S. at 38 n. 6, 45-47, 126 S.Ct. 2422. Numerous courts have recognized that a narrow avenue of relief remains for petitioners who sought to legalize their presence before IIRIRA took effect. Valdez-Sanchez, 485 F.3d at 1086; Wilson v. Gonzales, 471 F.3d 111, 121-22 (2d Cir.2006); United States v. Charleswell, 456 F.3d 347, 362 n. 19 (3d Cir.2006). Consequently, Femandez-Vargas does not preclude the claim that Molina brings here and it does not resolve the Landgraf issue we face.
Second, the majority argues that depriving Molina of the ability to argue defenses to removal is permissible because IIRIRA did not affect the substance of his asylum application. But the impact of IIRIRA on his asylum application is just one aspect of Molina’s claim. He also argues that retroactive deprivation of the ability to argue for relief from removal by IIRIRA is impermissible. As we stated in AlvarezPortillo, each provision of IIRIRA must be considered individually to determine its retroactive effect on each aspect of the petitioner’s case. 280 F.3d at 865; see Landgraf, 511 U.S. at 280, 114 S.Ct. 1483. At issue in this case is Molina’s ability to argue for relief from removal. Because § 1231(a)(5) eliminates this possibility, our traditional presumption against retroactivity prevents the application of § 1231(a)(5) to him. It is worth repeating that Molina argues that he was improperly deprived of the ability to argue for defenses to removal. On this point, our precedent compels a result contrary to the majority’s decision.
Third, the majority cites two Ninth Circuit cases and one Third Circuit case to support its argument that Molina did not have a settled expectation that he could apply for relief from removal pre-IIRIRA. Lopez-Urenda v. Ashcroft, 345 F.3d 788 (9th Cir.2003); Vasquez-Zavala v. Ashcroft, 324 F.3d 1105 (9th Cir.2003); Uspango v. Ashcroft, 289 F.3d 226 (3d Cir.2002). These cases are inapposite because they deal with situations in which petitioners filed last-minute asylum applications in the hope of avoiding the implications of IIRIRA, Lopez-Urenda, 345 F.3d at 790 (application filed three weeks before passage of IIRIRA); Vasquez-Zavala, 324 F.3d at 1106 (application filed three weeks before IIRIRA took effect); Uspango, 289 F.3d at 228 (application filed two months prior to passage of IIRIRA), a point recognized by both the Ninth and Third Circuits in subsequent cases. See Hernandez de Anderson v. Gonzales, 497 F.3d 927, 943 (9th Cir.2007); Halul v. Ashcroft, 96 Fed.Appx. 827, 830 (3d Cir.2004) (unpublished). The majority’s citation to Lopez-Urenda, Vasquez-Zavala and Uspango is puzzling because the petitioners in these cases received what Molina seeks: adjudication of his case before an immigration judge and the opportunity to argue for defenses to removal. 345 F.3d at 790-91, 324 F.3d at 1106-07, 289 F.3d at 228-29. Moreover, the issue in Lopez-Urenda, Vasquez-Zavala, and Uspango was the standard to be used when adjudicating the claim for relief, not whether the petitioner could bring a claim for relief at all.
Indeed, subsequent cases out of the Ninth and Third circuits support a conclusion contrary to the one that the majority draws. As the Ninth Circuit subsequently held in Hernandez de Anderson, IIRIRA is impermissibly retroactive when applied to a petitioner who applied for naturalization in 1995, more than a year before IIRIRA took effect, because it “would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment.” 497 F.3d at 944. As the court explained, “To deny Petitioner the opportunity to apply *1076 for suspension of deportation would be inconsistent with the elementary considerations of fairness dictating that individuals should have an opportunity to know what the law is and to conform their conduct accordingly.” Id. And as the Third Circuit has elaborated on these types of claims, a petitioner need not demonstrate reliance on pre-IIRIRA law to prevail on a retroactivity claim; he need only show that the law affected rights he possessed when he acted. Atkinson v. Att’y Gen. of U.S., 479 F.3d 222, 227-28 (3d Cir.2007) (“The Court has never held that reliance on the prior law is an element required to make the determination that a statute may be applied retroactively.”). Thus, these cases appear to support Molina’s claim, rather than refute it.
An unexplained premise in the majority’s opinion is that Molina’s asylum application is meaningfully different from an application for an adjustment of status for the purpose of our retroactivity analysis. Both an application for asylum and an application for adjustment of status involve attempts to legalize one’s presence in the United States. The Landgraf analysis does not rise or fall upon the character or the type of relief the petitioner sought. INS v. St. Cyr, 533 U.S. 289, 325, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (stating that it was immaterial to the retroactivity analysis whether the relief sought was discretionary or not). Rather, the question is whether application of the new law had a substantive effect on the petitioner.
As recounted above, we have held that deprivation of the ability to argue defenses to removal affects substantive rights and is not merely a procedural change. Alvarez-Portillo, 280 F.3d at 867. Post-Fernandez-Vargas, we have continued to rely upon our retroactivity analysis in AlvarezPortillo. See Lovan, 574 F.3d at 994. IIRIRA’s deprivation of Molina’s ability to argue for relief from removal has a substantive effect and is impermissibly retroactive under our case law.
Congress did not authorize retroactive application of IIRIRA to individuals like Molina and the majority has not provided sufficient justification for allowing DHS to do so. “[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.” Landgraf, 511 U.S. at 265, 114 S.Ct. 1483. “That a statute shall not be given retroactive effect, unless such construction is required by explicit language or by necessary implication, is a rule of general application.” United States v. St. Louis, S.F. & T. Ry. Co., 270 U.S. 1, 3, 46 S.Ct. 182, 70 L.Ed. 435 (1926). However problematic Molina’s claim for relief may appear to some, our traditional presumption against retroactive application entitles him to have it reviewed on its merits. Accordingly, I would grant the petition for review.