**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2377
_____

MOUSSA DIALLO,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A78-428-407)
Immigration Judge:  Honorable Jeffrey L. Romig
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 2, 2011

Before: MCKEE, Chief Judge , SMITH and GARTH, Circuit Judges

(Opinion filed:  May 23, 2011 )
_____

OPINION
_____

PER CURIAM

     Petitioner Moussa Diallo, a native of Guinea, seeks review of a final order of

removal.  For the reasons that follow, we will deny the petition for review.

1

Moussa Diallo entered the United States in 1989 as a non-immigrant visitor. He failed to depart, and in November 2002, the Department of Homeland Security ("DHS") commenced removal proceedings. In January 2003, Diallo conceded his removability and filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). He also applied for cancellation of removal. Between 2003 and 2007, Diallo had over ten hearings before the IJ. He was represented by counsel at each stage in the process, and numerous continuances were granted. In July 2007, DHS charged him with being removable under 8 U.S.C. § 1227(a)(2)(A)(ii) after he was convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. Diallo denied those charges and filed a revised asylum application in April 2008. In his application, he stated that he was fluent in English and was a native speaker of Fulani.

At his October 2008 hearing, counsel requested a continuance, which the Immigration Judge ("IJ") granted. A Fulani interpreter was present and noted that although a Fulani interpreter had been requested, Diallo spoke Fula. The interpreter stated that the two languages are different, but that individuals speaking the two languages can understand each other "generally." The IJ pointed out that Diallo had identified Fulani as his native language in his asylum application, but also noted that Diallo indicated that Fula was his "best language" at the hearing, and that the court would order a Fula-speaking interpreter for the rescheduled hearing in December 2008.

In the meantime, counsel withdrew due to Diallo's failure to cooperate with counsel's persistent attempts to meet and confer, and to collect information and fees. Diallo appeared without counsel at the December 2008 hearing, at which a Fulani-speaking interpreter was present. Diallo stated that he spoke Fulani, but that he would have preferred a Fula-speaking interpreter. He stated that his English was "very good," and chose to proceed in English. Diallo also confirmed that no interpreter was present during his criminal proceedings, which were conducted in English. The IJ asked the interpreter to stand by in case Diallo had trouble communicating, and reminded Diallo to indicate if and when he could not understand a question.

The IJ noted that Diallo's counsel had withdrawn due to Diallo's refusal to cooperate and pay fees. Diallo disagreed, and stated that he could not pay the fees or retain new counsel because his business was slow. The IJ explained that there was no right to free counsel at immigration proceedings, and refused a continuance given that Diallo's case had been pending for six years and that he had not shown good cause for a continuance.

Diallo testified that, in Guinea, he was persecuted against because of his Fula tribal membership. He stated that his clothing business was targeted and burned down. He joined the Union for Progress and Renewal ("UPR"), a political "party," in the United States, and he fears future persecution if returned to Guinea based on his political activities with the UPR and his tribal ethnicity. Diallo also claimed that he fears that his daughters will be subjected to female genital mutilation ("FGM") if they are returned to

3

Guinea.

The IJ found that Diallo's criminal convictions involved moral turpitude[1], and that, as a result, he was ineligible for cancellation of removal. The IJ also determined that Diallo's asylum application was untimely, and that he had not established that he qualified for an exception to the one-year filing deadline. The IJ considered Diallo's claim that he would face persecution for his political activities with the UPR in this country, but found that his assertion of UPR membership was uncorroborated, and that there was no evidence that anyone in Guinea was aware of his political activities here. Finally, the IJ determined that because Diallo's wife (a Canadian citizen[2]) and his daughters (United States citizens) did not have to return to Guinea with him, he could not base his eligibility for withholding of removal on his fear that his daughters would be subject to FGM if they returned to Guinea. The IJ concluded that he failed to meet the burden of proof for withholding of removal or CAT relief. The Board of Immigration Appeals ("BIA") dismissed his appeal. Diallo filed a timely petition for review

## II.

We have jurisdiction over the petition for review pursuant to 8 U.S.C. § 1252. Diallo did not challenge the IJ's findings that his application for asylum was untimely and that he was statutorily ineligible for cancellation of removal before the BIA. We will

---

[1] Diallo was convicted of five counts of trademark counterfeiting.
[2] It appears that Diallo's wife was granted asylum in Montreal, Canada, based on her experiences in Guinea as a victim of rape and FGM on account of her Fula membership.

not review those decisions now.[3] We retain jurisdiction to consider the denial of his applications for withholding of removal and protection under the CAT. Tarrawally v. Ashcroft, 338 F.3d 180, 185-86 (3d Cir. 2003). Where, as here, the BIA adopts the findings of the IJ and discusses some of the bases for the IJ's opinion, this Court will review both opinions. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review factual findings for substantial evidence, see Briseno-Flores v. Att'y Gen., 492 F.3d 226, 228 (3d Cir. 2007), upholding them "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).

## III.

Diallo first challenges the IJ's denial of his request for a continuance. Our review of such a claim is for abuse of discretion. Ponce-Leiva v. Ashcroft, 331 F.3d 369, 377 (3d Cir. 2003). "The question of whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case." Id. (quoting Baires v. INS, 856 F.2d 89, 91 (9th Cir. 1988)). An IJ "may grant a continuance for good cause shown." 8 C.F.R. § 1003.29. Relevant considerations may include the nature of the evidence presented and its importance to the alien's claim and the number of continuances already granted. Baires, 856 F.2d at 91. It

___

[3] In any event, we lack jurisdiction under 8 U.S.C. § 1158(a)(3) to review the denial of Diallo's asylum application as untimely.

is an abuse of discretion for an IJ to deny a continuance solely on the basis of case-completion goals without taking into consideration the circumstances of a petitioner's case. Hashmi v. Att'y Gen., 531 F.3d 256, 260-61 (3d Cir. 2008).

Diallo moved for a continuance at his merits hearing after his counsel withdrew. The IJ considered that a continuance to find new counsel and allow him or her to become acquainted with the case would require significant time. However, the IJ also gave consideration to the other circumstances in Diallo's case. At that point, Diallo's case had been pending for over six years, and he had been granted a number of continuances and postponements of his merits hearing. He had been represented by a series of attorneys in a variety of proceedings, and had failed to cooperate with his most recent counsel or pay fees. Counsel gave Diallo notice before withdrawing, and Diallo made no attempt to retain new counsel in the weeks prior to the December hearing. See Ponce-Leiva, 331 F.3d at 367-77 (the mere inability to obtain counsel, after being given ample time to do so, does not constitute a due process violation). We agree that Diallo failed to show good cause for another continuance, and we find that the IJ did not deny the continuance based solely on the basis of the age of the case. Moreover, we note that on appeal, with the benefit of counsel, Diallo did not submit an affidavit describing what evidence he would have presented had he been able to secure new counsel, and in fact presented no new information in support of any of his claims. Accordingly, we agree with the BIA that the IJ did not abuse his discretion in denying Diallo's request for a continuance. To the extent Diallo argues that the denial of the continuance constituted a violation of his

6

constitutional right to counsel, we find that there was no denial of his right to counsel. See Uspango v. Ashcroft, 289 F.3d 226, 231 (3d Cir. 2002) (alien's mere inability to obtain counsel does not constitute a due process violation).

Diallo next claims that the IJ deprived him of due process by not providing a Fula-speaking interpreter. This Court has held that an asylum-seeker has the right to the services of a translator. See Marincas v. Lewis, 92 F.3d 195, 204 (3d Cir. 1996); see also Issiaka v. Att'y Gen., 569 F.3d 135, 143 (3d Cir. 2009) ("'faulty or unreliable translations can undermine the evidence on which an adverse credibility finding is based'") (citation omitted). The Ninth Circuit has held that in order to establish a violation of that right, an alien must show that the translation was prejudicially incompetent. Hartooni v. INS, 21 F.3d 336, 340 (9th Cir. 1994).

We acknowledge that the IJ knew Diallo was a native Fula speaker, and that a Fulani, not Fula, translator was present at his hearing. We also note that the IJ asked Diallo whether he preferred to proceed in English or Fulani, and that Diallo initially answered that he would prefer a Fula interpreter. However, as the BIA stated, Diallo has lived in the United States for over nineteen years, operates a small retail business, participated in his criminal trial in English, and told the IJ that his English was "very good." The BIA also properly considered that Diallo did not point to any specific examples in the hearing transcript that reflected a lack of understanding due to a language barrier. In addition, as the government argues, a Fulani-speaking interpreter was used at a 2006 hearing, and Diallo did not complain that he did not understand that translation.

7

He also testified and answered the IJ's questions in English without an interpreter at several prior hearings. Finally, the IJ twice reminded Diallo to inform the court if he did not understand a question. He does not explain how he would have responded differently to any of the questions had a Fula interpreter been present. Accordingly, the BIA did not err in concluding that the IJ did not abuse its discretion in denying this claim.

Diallo next claims that the IJ failed to "develop the record" for his claims for withholding of removal and CAT relief. The IJ has a duty to develop an applicant's testimony. See Toure v. Att'y Gen., 443 F.3d 310, 325 (3d Cir. 2006); Bonhometre v. Gonzales, 414 F.3d 442, 448 (3d Cir. 2005). To prevail on his claim that the IJ denied him due process by failing to develop the record, Diallo "must make an initial showing of substantial prejudice." Bonhometre, 414 F.3d at 448.

Diallo faults the IJ for not questioning him about the basis for his wife's asylum in Canada and the harms that his brothers suffered in Guinea. However, as the government argues, Diallo failed to mention facts relating to his wife's history in his revised asylum application, and failed to mention any of her experiences at his own hearing in response to the IJ's repeated open-ended questions about the source of Diallo's fear. Moreover, in his appeal to the BIA, Diallo did not submit any documents to support his wife's asylum status. Additionally, his affidavit in support of his revised asylum application makes no mention of his brothers. The record reveals that the IJ questioned Diallo about the basis for his persecution claims, eliciting testimony as to the destruction of Diallo's business in Guinea, his political activities in this country, and his fear that his daughters would be

8

subjected to FGM. Accordingly, we conclude that Diallo has failed to show substantial prejudice.

Diallo also challenges the IJ's finding that he failed to corroborate his assertion of membership in the UPR. We have found that "an applicant for asylum must provide reliable evidence to corroborate testimony when it is reasonable [to do so] and there is no satisfactory explanation for its absence." Sandie v. Att'y Gen., 562 F.3d 246, 252 (3d Cir. 2009). Accordingly, denial of relief may be predicated on a failure to corroborate when: "(1) the IJ identifies facts for which it is reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain the failure." Chukwu v. Att'y Gen., 484 F.3d 185, 191-92 (3d Cir. 2007) (citing Abdulai, 239 F.3d at 554).

Here, the IJ satisfied the requirements set forth in Chukwu. The IJ gave Diallo the opportunity, while still represented by counsel, to present supporting evidence. Counsel advised the IJ that Diallo would submit only country conditions evidence and that Diallo would be the only witness at his merits hearing. Moreover, Diallo, again represented by counsel, did not submit any additional evidence to the BIA on appeal. Accordingly, the evidence presented does not compel a conclusion contrary to the IJ's and BIA's.

To the extent Diallo challenges the BIA's affirmance of the denial of his claims for withholding of removal and CAT relief, we will briefly address those claims now. To meet the stringent standard for withholding of removal, an applicant must provide objective evidence that future persecution is "more likely than not" to occur upon

removal. 8 C.F.R. § 1208.16(b)(2); <u>Lukwago v. Ashcroft</u>, 329 F.3d 157, 182 (3d Cir. 2003). To be eligible for CAT relief, an alien must show that it is more likely than not that he will be tortured if removed to the country in question. 8 C.F.R. § 1208.16(c)(2).

We agree that Diallo failed to prove that it is more likely than not that he would be persecuted on account of a protected ground. <u>See</u> <u>Ndayshimiye v. Att'y Gen.</u>, 557 F.3d 124, 129 (3d Cir. 2009) (an asylum applicant must show a nexus between persecution and one of the five protected grounds). The BIA properly concluded that the attack on his business does not establish a nexus to one of the protected grounds. Likewise, Diallo's claim that he will face persecution because of his Fula tribal membership also fails. Racial and ethnic tensions and discrimination do not necessarily denote persecution. <u>See</u> <u>Ahmed v. Ashcroft</u>, 341 F.3d 214, 217-18 (3d Cir. 2003) (widespread legal and economic discrimination against Palestinians in Saudi Arabia does not constitute persecution).

Finally, the record is devoid of any evidence that Diallo is eligible for CAT protection, as he fails to show that it is more likely than not that he will face torture if removed to Guinea. <u>See</u> <u>Zubeda v. Ashcroft</u>, 333 F.3d 463, 471 (3d Cir. 2003). Accordingly, we will deny the petition for review.

IV.

For the foregoing reasons, we will deny the petition for review.