**Roberto RUBIO ALCARAZ, Petitioner,**

v.

**Alberto GONZALEZ,\* Attorney General, Respondent.**

**No. 03–71310.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2005.

Decided Feb. 24, 2005.

---

\* Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

Before: PREGERSON, CANBY, and TALLMAN, Circuit Judges.

MEMORANDUM**

Petitioner Roberto Rubio–Alcaraz was found removable on the basis of a February 9, 1999, domestic violence conviction. 8 U.S.C. § 1227(a)(2)(E)(i). He conceded removability. The Immigration Judge (IJ) pretermitted his application for cancellation of removal because the IJ found that Rubio–Alcaraz had not met the statutory requirement of seven years of continuous residency. 8 U.S.C. § 1229b(a).[1] The

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Unless otherwise indicated, all future references to statute are to the eighth title of the United States Code.

Board of Immigration Appeals ("BIA") upheld the IJ's ruling, and also denied Rubio–Alcaraz's new claim for relief under former INA § 212(c). We have jurisdiction to review the BIA's decision under § 1252(a)(1).

■ The BIA did not err in finding Rubio–Alcaraz statutorily ineligible for cancellation of removal. Continuous residence begins to accumulate once an alien has been admitted in any status; Rubio–Alcaraz therefore began to accumulate continuous residence on August 8, 1987, when he became a temporary resident.[2] Continuous residence is terminated when, *inter alia,* an alien commits a crime of moral turpitude. § 1229b(d)(1)(B); §. 1182(a)(2)(A)(i)(I). On September 17, 1993, Rubio–Alcaraz was convicted of corporal injury to a spouse or cohabitant in violation of Cal.Penal Code § 273.5(a), which is a crime of moral turpitude. *See Gradega v. INS,* 12 F.3d 919, 921–22 (9th Cir.1993).[3] Thus Rubio–Alcaraz did not fulfill the statutory requirement of seven years of continuous residence necessary to be eligible for cancellation of removal. § 1229b(a).

■ There was also no error in the BIA's determination that Rubio–Alcaraz is ineligible for relief from deportation under former INA § 212(c). § 1182(c)(1995) (repealed). Congress repealed § 212(c) when it passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996. Pub.L. No. 104–208, 110 Stat. 3009–597 (1996). Rubio–Alcaraz's Notice to Appear was filed on March 1, 1999, almost two years after IIRIRA

became effective, thus Rubio–Alcaraz is ineligible for the discretionary relief from deportation that was formerly available under INA § 212(c). *See Ramirez–Zavala v. Ashcroft,* 336 F.3d 872, 874 (9th Cir. 2003) (holding in another context that an alien against whom removal proceedings were commenced after IIRIRA's April 1, 1997, effective date was ineligible for relief that was repealed by IIRIRA).

■ Neither the conclusion that Rubio–Alcaraz is ineligible for cancellation of removal nor the conclusion that he is ineligible for relief under former INA § 212(c) is contrary to "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 273–80, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1944); *quoted in INS v. St. Cyr,* 533 U.S. 289, 321, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). It may be true that when Rubio–Alcaraz pled guilty in 1993 he expected his plea to have no immigration consequences. Had he committed no further crimes, his expectations would most likely have been realized. However, Rubio–Alcaraz disturbed these expectations by continuing to incur domestic violence convictions.

When Rubio–Alcaraz pled guilty in February 1999 to the crime for which he is now being removed, IIRIRA had long been in effect and Rubio–Alcaraz had reason to know that he would be subject to IIRIRA's provisions, including the stopclock rule and the repeal of former INA § 212(c). The result that the BIA reached was well within what he should have ex-

---

**2.** Rubio–Alcaraz became a lawful permanent resident on August 13, 1989.

**3.** Rubio–Alcaraz was convicted of this same crime on three other occasions: July 19, 1984, October 29, 1996, and February 9, 1999. He was also convicted of battery on March 17, 1980, and of willful cruelty to a

child on October 29, 1996. The 1993 and 1999 convictions are the only convictions relevant to our analysis of Rubio–Alcaraz's eligibility for relief from removal, but the remaining crimes are relevant to the BIA's discretionary decision to deny his application for voluntary departure, which we uphold.

pected when he entered the 1999 plea for which he is being removed. Subjecting Rubio–Alcaraz to IIRIRA's provisions does not disturb any reasonable expectation. The BIA's application of IIRIRA to Rubio–Alcaraz was therefore not impermissibly retroactive under the Constitution.

**PETITION FOR REVIEW DENIED.**