NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSEFA RAMIREZ-MATIAS DE MATIAS, et al., | Nos. 17-73492 19-70208 |
| Petitioner, | |
| v. | Agency Nos. A202-122-291 A202-122-292 A202-122-293 |
| WILLIAM P. BARR, Attorney General, | |
| Respondent. | MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 9, 2020**
Seattle, Washington

Before: FERNANDEZ and NGUYEN, Circuit Judges, and BOLTON,*** District Judge.

Josefa Ramirez-Matias De Matias ("Ramirez-Matias") and her two children,

Rene Matias-Ramirez ("Rene") and Sergio Matias-Ramirez ("Sergio")

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

(collectively, "Petitioners"),[1] natives and citizens of Guatemala, petition for review of a Board of Immigration Appeals ("BIA") order dismissing: (1) their appeal from an Immigration Judge's ("IJ") decision denying their applications for asylum, withholding of removal, and protection under CAT; and (2) Ramirez-Matias's incompetent translation due process claim. *See* 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R. §§ 1208.16(c), 1208.18. Ramirez-Matias also petitions for review of the BIA's denial of her motion to reconsider and terminate under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and requests that we reconsider our decision in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019).

Our jurisdiction is governed by 8 U.S.C. § 1252. When the BIA conducts its own review of the evidence and the law, "our review 'is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted.'" *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (quoting *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000)). We review denials of asylum, withholding of removal, CAT relief, and all purely factual findings for substantial evidence. *Wang v. Sessions*, 861 F.3d 1003, 1007 (9th Cir. 2017). The BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to

---

[1] Ramirez-Matias is the lead Petitioner. Rene's and Sergio's respective asylum claims are derivative of her claim. *See* 8 U.S.C. § 1158(b)(3)(A). Petitioners filed individual applications for Convention Against Torture ("CAT") relief.

the contrary." 8 U.S.C. § 1252(b)(4)(B). We review due process violations in immigration proceedings de novo. *Lopez-Urenda v. Ashcroft*, 345 F.3d 788, 791 (9th Cir. 2003). We review the BIA's denial of a motion to reconsider for abuse of discretion. *Toor v. Lynch*, 789 F.3d 1055, 1059 (9th Cir. 2015).

## I.        Asylum & Withholding of Removal

Substantial evidence supports the BIA's determination that Ramirez-Matias has failed to establish that she is a member of the particular social group that she alleges. 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A). Ramirez-Matias argues that she has a well-founded fear of persecution on account of her membership in a particular social group consisting of married women in Guatemala who are unable to leave their relationship. *See Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014), *overruled by Matter of A-B-*, 27 I. & N. Dec. 316, 319–20 (U.S. Atty. Gen. 2018) (acknowledging particular social group comprised of "married women in Guatemala who are unable to leave their relationship" where applicant had shown inability to leave marriage based on repeated coercive acts by husband).

Even assuming Ramirez-Matias's proposed social group were cognizable, Ramirez-Matias has not demonstrated that she was unable to leave her husband, Santos Matias Ramirez-Matias ("Santos"). The BIA highlighted the following facts supporting this conclusion. Santos left for the United States in 2000 and returned to Guatemala in 2013; during that thirteen-year period, he contacted Ramirez-Matias

once, in 2003. After Santos returned to Guatemala (for no more than two years), he made no effort to meet with Ramirez-Matias. Finally, and most significantly given Ramirez-Matias's proposed social group, Santos informed Ramirez-Matias that if she wanted a divorce, she would have to pay for it because he was going to "get [himself] another woman." We therefore agree with the BIA that Petitioners are ineligible for asylum and withholding of removal.

## II.    CAT Protection

Substantial evidence supports the BIA's conclusion that Petitioners have failed to show that it is more likely than not that they would be tortured if returned to Guatemala. *See* 8 C.F.R. § 1208.16(c)(2). While Petitioners have presented evidence that they were whipped by members of a local patrol investigating the murder of an elderly couple in Petitioners' village, the harm was not so severe as to rise to the level of torture. *See* 8 C.F.R. § 1208.18(a)(1) (limiting CAT relief to torture "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity"). We agree with the BIA that Petitioners are ineligible for CAT protection.

## III.    Due Process Violation

We have long held that competent translation is fundamental to a full and fair hearing. *See He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003); *Perez-Lastor v. INS*, 208 F.3d 773, 778 (9th Cir. 2000). To make out a due process violation based

on incompetent translation, Ramirez-Matias "must demonstrate that a better translation likely would have made a difference in the outcome." *Gutierrez-Chavez v. INS*, 298 F.3d 824, 830 (9th Cir. 2002). We have previously identified three types of evidence which tend to prove incompetent translation: (1) direct evidence of incorrectly translated words; (2) unresponsive answers by the witness; and (3) the witness's expression of difficulty understanding what is said to her. *Siong v. INS*, 376 F.3d 1030, 1041 (9th Cir. 2004).

The BIA concluded that Ramirez-Matias failed to establish a due process violation because she failed to show that a better translation would have made a difference in the outcome. The BIA noted that "misunderstandings that arose during the proceedings were clarified before [Ramirez-Matias] moved forward with her testimony." Further, on appeal, Ramirez-Matias failed to identify any aspect of her claim that she was unable to present before the IJ as a result of translation issues.

Ramirez-Matias, however, maintains that the IJ violated her due process rights when he did not allow the case to be continued in order to secure an interpreter who spoke her specific Mam dialect.[2] According to Ramirez-Matias, "many questions [] went unanswered" due to inadequate translation, and the IJ

---

[2] The interpreter denied any difficulty on his part in understanding Ramirez-Matias.

relied on such "discrepancies" in finding that Ramirez-Matias failed to articulate her fear of persecution by Santos. While Ramirez-Matias concedes that "[t]here is no direct evidence of incorrectly translated words," she insists that the transcript reveals "multiple instances of unresponsive answers."

Leaving aside the issue of whether Ramirez-Matias provided unresponsive answers during the IJ hearing, she has failed to show that a better interpretation would have made a difference in the outcome of the IJ hearing. The sole instance of prejudice cited by Ramirez-Matias—that the IJ noted her unresponsiveness and discrepancies between her oral testimony and written statement—does not actually demonstrate prejudice. *Cf. Colmenar v. INS*, 210 F.3d 967, 972 (9th Cir. 2000) (noting that petitioner explicitly stated in brief how incompetent translation impeded testimonial explanation of key claims and conclusions from written application). Indeed, the IJ found Ramirez-Matias to be credible and emphasized that he did not use the "fairly significant" discrepancies against her. *Cf. Perez-Lastor*, 208 F.3d at 781 ("We have previously recognized that an adverse credibility finding may result from a faulty translation.").

Nevertheless, Ramirez-Matias argues that the IJ's "skepticism" of her testimony is "obvious." We disagree. It is clear from the hearing transcript, as well as his oral decision and order, that the IJ behaved as a "neutral fact-finder

interested in hearing [Ramirez-Matias]'s evidence."[3] *Colmenar*, 210 F.3d at 971.

We affirm the BIA's ruling that Ramirez-Matias's hearing satisfied due process.

## IV.  *Karingithi v. Whitaker*

The BIA did not abuse its discretion by denying Petitioners' motion to reconsider and terminate. Our decision in *Karingithi* forecloses Ramirez-Matias's argument that, under *Pereira*, the IJ lacked jurisdiction because her Notice to Appear ("NTA") lacked date and time information regarding her removal proceedings. *Karingithi*, 913 F.3d at 1162. Still, Ramirez-Matias urges us to reconsider our decision in *Karingithi*. We decline to do so. We are bound by that decision in the absence of any clearly irreconcilable intervening higher authority. *See Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc).

**PETITION FOR REVIEW DENIED.**

---

[3] When asked at the conclusion of her direct examination if there was "anything else that [she] want[ed] to tell the Court?" Ramirez-Matias responded, "there might be some words that I didn't know." When pressed by the IJ to specify which words she "didn't know," Ramirez-Matias only said "[m]aybe there's some words that I didn't remember. I don't remember." *See Perez-Lastor*, 208 F.3d at 782 ("Finally, we recognize that, as a practical matter, an IJ may ameliorate the damage caused by an incompetent translation by asking for '[c]larification or repetition.'").